**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RICKY RANSOM,

        Plaintiff,

vs.

        Case No. 3:14-cv-1391-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I.  Status**

Ricky Ransom ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI").  Plaintiff's alleged inability to work is the result of bipolar disorder, depression, "steel rod in right leg," high blood pressure, and "problems with thyroid."  See Transcript of Administrative Proceedings (Doc. No. 9; "Tr." or "administrative transcript"), filed February 6, 2015, at 311 (emphasis omitted).  Plaintiff filed his applications on September 3, 2009,[2] alleging an onset date of January 1, 2007.  Tr. at 237-40 (DIB); Tr. at 231-36 (SSI).  Plaintiff's applications were denied initially, Tr. at 94 (DIB); Tr. at 95 (SSI), and upon reconsideration, Tr. at 96 (DIB); Tr. at 97 (SSI).

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed February 9, 2015; Reference Order (Doc. No. 11), entered February 9, 2015.

[2] Elsewhere in the administrative transcript, the filing date is indicated as August 26, 2009. See Tr. at 307 (Disability Report).  The discrepancy is immaterial to the issues presented here.

On February 24, 2012, an Administrative Law Judge ("ALJ") issued a decision finding Plaintiff not disabled and denying Plaintiff's claims. Tr. at 101-08. The Appeals Council ("AC") then vacated that decision on April 3, 2013 and remanded the case to the ALJ for resolution of certain issues. Tr. at 113-15. On remand from the AC, on February 27, 2014, the ALJ held a hearing during which the ALJ heard testimony from Plaintiff, who was represented by counsel. Tr. at 42-68. At the time of the hearing, Plaintiff was fifty-seven (57) years old. Tr. at 46. On April 25, 2014, the ALJ issued a decision finding Plaintiff not disabled "from January 1, 2007, through the date of th[e] decision," and denying Plaintiff's claim. Tr. at 34; see Tr. at 24-35 ("ALJ's Decision").

Plaintiff then requested review by the AC, Tr. at 12-13, and submitted evidence to the AC in the form of a brief authored by an attorney from the law firm representing Plaintiff, see Tr. at 9; Tr. at 401-04 (attorney's brief dated June 12, 2014). The AC granted Plaintiff's request for review on August 15, 2014. Tr. at 226-30. Plaintiff then submitted a second attorney's brief to the AC. See Tr. at 9; Tr. at 406-07 (attorney's brief dated September 10, 2014). On September 16, 2014, the AC issued a decision in which the AC disagreed with part of the ALJ's Decision but nonetheless denied Plaintiff's claim, finding Plaintiff not disabled "at any time from January 1, 2007 through April 25, 2014, the date[] of the [ALJ's Decision]" Tr. at 7; see Tr. at 5-8 ("AC's Decision").

On November 12, 2014, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three issues on appeal: (1) whether "the ALJ failed to properly weigh the medical evidence"; (2) whether "the ALJ failed to properly evaluate [Plaintiff]'s credibility"; and (3) whether the AC "erred by relying on the Medical-Vocational Guidelines[, 20 C.F.R. part 404, subpart P, appendix 2 ('Grids')]." Plaintiff's Memorandum of Law in Support of His Position (Doc. No. 14; "Pl.'s Mem."), filed April 8, 2015, at 10, 16, 18 (emphasis and some capitalization omitted); see id. at 10-20. Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem.") on July 13, 2015. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons discussed below.

## II.  The ALJ's Decision and the AC's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ proceeded through step four of the five-step sequential inquiry, where his inquiry ended based on his step four finding. See Tr. at 26-34. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since January 1, 2007, the alleged onset date." Tr. at 26 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: a bipolar disorder, a post-traumatic stress disorder, a substance abuse disorder, and history of right tibia fracture." Tr. at 27 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 27 (emphasis and citation omitted).

The ALJ then determined that Plaintiff "has the residual functional capacity [('RFC')] to perform medium work (described as the ability to lift and carry 50 pounds occasionally and 25 pounds frequently and stand, walk and sit for 6 hours each in an 8-hour workday) and is limited to understanding, remembering and carrying out simple instructions." Tr. at 29 (emphasis omitted). At step four, the ALJ found that Plaintiff "is capable of performing past relevant work as a fast food cook[, which] does not require the performance of work-related activities precluded by" Plaintiff's RFC. Tr. at 34 (emphasis and citation omitted). Because the ALJ found Plaintiff is capable of performing his past relevant work, the ALJ was not required to and did not proceed to step five. The ALJ concluded that Plaintiff "has not been under a disability . . . from January 1, 2007, through the date of this decision." Tr. at 34 (emphasis and citation omitted).

As noted, the AC granted Plaintiff's request for review of the ALJ's Decision. Tr. at 226-30. In its decision, the AC adopted and agreed with most of the ALJ's Decision, see Tr. at 5-6, except for the ALJ's "finding that [Plaintiff] is capable of performing past relevant work as a fast food cook," Tr. at 6. Because this job had been classified as "skilled" work, the AC found it inconsistent with the finding that Plaintiff "is limited to understanding, remembering, and carrying out simple instructions." Tr. at 6; see also Tr. at 29 (RFC finding in the ALJ's Decision). Proceeding to step five in the sequential inquiry, however, the AC pointed out that "Social Security Rul[ing] [('SSR')] 83-10 takes administrative notice of approximately 900 separate medium unskilled occupations." Tr. at 6. Relying on the Grids, the AC determined that Plaintiff "can perform other jobs which exist in significant numbers in the national economy." Tr. at 6.

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is

reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff's three issues are discussed in turn below.

### A. The ALJ's Evaluation of the Medical Evidence

Plaintiff contends that "the ALJ failed to properly weigh the medical evidence." Pl.'s Mem. at 10 (emphasis and some capitalization omitted); see id. at 10-16. Specifically, Plaintiff argues that the ALJ erred by giving less than controlling weight to the opinion of treating psychiatrist Linda Graham, M.D., and instead crediting the opinion of a non-examining psychiatrist. See id. at 10-16.

The Regulations establish a "hierarchy" among medical opinions[4] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating

---

[4] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[5] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment

---

[5] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

The opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). An ALJ may, however, rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight

given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

Here, Dr. Graham, a doctor at the RHA Behavioral Health Center ("RHA Center"), treated Plaintiff between 2011 and 2013 for mental health problems, including bipolar disorder.  See Tr. at 542-46, 591-600, 664-69, 676-79 (treatment records); Tr. at 601-02 (letter dated February 20, 2013); Tr. at 604-11 (Psychiatric/Psychological Impairment Questionnaire dated July 18, 2013); Tr. at 680-81 (letter dated August 20, 2013, restating text of February 20, 2013 letter).  The ALJ's Decision summarizes the opinions Dr. Graham expressed in the two essentially identical letters and the impairment questionnaire.  See Tr. at 32.  In the letters, Dr. Graham stated, among other things, that Plaintiff has a global assessment of functioning ("GAF") score of 50, which is "indicative of severe psychological symptoms." Tr. at 601, 680. In the Psychiatric/Psychological Impairment Questionnaire, Dr. Graham indicated Plaintiff is "[m]oderately limited" in several work-related abilities, including "[t]he ability to understand and remember detailed instructions."  Tr. at 607; see Tr. at 607-09.  Dr. Graham also indicated a few marked limitations, including Plaintiff's "ability to maintain attention and concentration for extended periods."  Tr. at 607; see Tr. at 607-08.

After summarizing Dr. Graham's opinions, the ALJ stated that he "considered" them "but did not allow them significant evidentiary weight as they are not supported by treatment notes from the [RHA] Center." Tr. at 32. The ALJ went on to specifically discuss RHA Center treatment notes from June, July, and September 2011 and July 2013, all signed by Dr. Graham. See Tr. at 32-33; Tr. at 595-98 (treatment note dated June 21, 2011);[6] Tr. at 593-94 (treatment note dated July 20, 2011); Tr. at 591-92 (treatment note dated September 14, 2011); Tr. at 664-65 (treatment note dated July 18, 2013). The ALJ observed, among other things, that these treatment notes sometimes describe Plaintiff as unkempt and depressed, but they also sometimes describe him as euthymic (or "as both euthymic and depressed"), as well as having "normal speech, normal thought process and content, intact memory, good to average judgment," and "appropriate" affect. Tr. at 32-33. These observations of the ALJ are reflected in the treatment notes themselves. See Tr. at 591, 593, 596, 664-70, 676, 678.

Plaintiff disputes the ALJ's determination to give less weight to Dr. Graham's opinions than he gave to a non-examining psychologist's opinion from January 2010.[7] See Pl.'s Mem. at 14-15. In addressing this psychologist's opinion, the ALJ stated he gave it "significant evidentiary weight in concluding [Plaintiff] limited to understanding, remembering and carrying out simple instructions as such conclusion is supported by the other evidence of

---

[6] A copy of this same treatment note is included elsewhere in the administrative transcript. See Tr. at 542-46.

[7] In arguing this point, Plaintiff cites a page in the administrative transcript from a January 2010 mental RFC assessment completed by state psychologist Wendy Silver, Psy.D. See Pl.'s Mem. at 14; Tr. at 431-33. Neither Plaintiff nor the ALJ refers to the psychologist by name. See Pl.'s Mem. at 14-15; Tr. at 33.

-10-

record." Tr. at 33.  The undersigned finds that this determination is supported by substantial evidence in the record, particularly the RHA treatment notes.  See, e.g., Tr. at 543, 591, 664-70, 676.

Furthermore, contrary to Plaintiff's assertion that the non-examining opinion is "[t]he only contradictory evidence relied on by the ALJ" to discount Dr. Graham's opinion, Pl.'s Mem. at 14, the undersigned finds that the ALJ clearly relied on the contradictory evidence in the RHA Center treatment notes, discussed above, to support the finding as to Dr. Graham's opinions, see Tr. at 32.  Because the ALJ clearly articulated good cause, supported by substantial evidence in the record, the undersigned finds no error in the ALJ's determination to give less than substantial weight to Dr. Graham's opinions.

### B.  The ALJ's Credibility Finding

Plaintiff contends that "the ALJ's brief credibility determination is not supported by substantial evidence."  Pl.'s Mem. at 17; see id. at 16-18.

"[C]redibility determinations are the province of the ALJ."  Moore, 405 F.3d at 1212. The ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225.  "When evaluating a claimant's subjective symptoms, the ALJ must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms."  Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).  After considering the claimant's subjective complaints, "the ALJ may reject them as not credible, and that

-11-

determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in th[e ALJ's D]ecision." Tr. at 30. As to Plaintiff's mental impairments, the ALJ found that the medical evidence "does not support a conclusion that [Plaintiff's] mental health issues render him disabled." Tr. at 30. In the detailed discussion of the medical evidence that followed, the ALJ noted, for instance, observations of consultative examiner Carlos Martinez, M.D., that Plaintiff was "well oriented to person, place and time," "able to relate normally," and "able to perform simple arithmetic accurately and rapidly as well as to recall four objects out of five after approximately twenty minutes." Tr. at 30; see Tr. at 426. The ALJ further noted that Plaintiff had been hospitalized in 2013 for "suicidal ideation" but was discharged four days later and "admitt[ed] that he had become suicidal after drinking alcohol." Tr. at 30; see Tr. at 687-88. The ALJ also pointed out statements from Dr. Graham indicating that Plaintiff has since been improving with treatment and that his "prognosis with respect to his mental health issues was good if he were compliant with taking his psychotropic medications." Tr. at 30; see Tr. at 604, 666.

In arguing that the ALJ's credibility finding is not supported by substantial evidence, Plaintiff specifically addresses the ALJ's findings related to Plaintiff's mental impairments. See Pl.'s Mem. at 17-18. First, Plaintiff contends that the ALJ improperly relied on the fact that a consultative examiner concerned with physical impairments did not report any serious

mental disabilities. Id. at 17. Second, Plaintiff argues that the ALJ erroneously concluded Plaintiff is not disabled on the basis of, on the one hand, Plaintiff's lack of psychiatric hospitalization and, on the other hand, his improvement with treatment. Id. at 17-18.

Notwithstanding Plaintiff's arguments, the undersigned finds that the ALJ's credibility finding is supported by substantial evidence in the record. Such evidence includes, but is not limited to, the observations of consultative examiner Dr. Martinez and evidence that Plaintiff is improving with treatment. See, e.g., Tr. at 426, 604, 664-670

## C. The AC's Reliance on Medical-Vocational Guidelines (Grids)

Plaintiff contends that the AC's "reliance solely on the [Grids] was inappropriate in light of [Plaintiff]'s significant non-exertional limitations." Pl.'s Mem. at 19.

Generally, the Grids may be relied on at step five of the sequential inquiry to determine whether a claimant can perform work that exists in significant numbers in the national economy. See Phillips, 357 F.3d at 1242. However, the Grids may not be exclusively relied on in two situations: "either when [a] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments[8] that significantly limit basic work skills." Id. (emphasis in original) (internal alterations, quotation, and citation omitted). If it is determined that either condition exists, a VE must be consulted. Id. Impairments "significantly limit basic work skills" if they "prohibit

---

[8] "Exertional limitations affect an individual's ability to meet the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and pulling." Phillips, 357 F.3d at 1242 n.11 (citing SSR 96-4, 61 Fed. Reg. 34488 (July 2, 1996)). "Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands." Id. (citing SSR 96-4).

a claimant from performing 'a wide range' of work at a given work level." Id. at 1243 (citation omitted).

Here, the AC relied solely on the Grids, rather than a VE, to conclude that Plaintiff is not disabled. See Tr. at 6-7. In reaching this conclusion, the AC found, among other things, that Plaintiff has the RFC "to perform medium work, and is limited to understanding, remembering, and carrying out simple instructions." Tr. at 7. The AC also considered Plaintiff's age, education, and past relevant work, and then stated as follows:

> If [Plaintiff] had the capacity to perform the full range of the medium exertional level, 20 CFR 404.1569 and 416.969 and [Grid] Rules 203.26, 203.19, and 203.12 . . . would direct a conclusion of not disabled. [Plaintiff]'s non-exertional limitations[9] do not significantly impact the base of 900 medium unskilled jobs recognized in [SSR] 83-10. Using the above-cited [Grid] Rule as a framework for decision-making, there are a significant number of jobs in the national economy which [Plaintiff] could perform.

Tr. at 7.

Plaintiff contends that reliance on the Grids was inappropriate due to the ALJ's findings that Plaintiff "has moderate difficulties in concentration, persistence, or pace" and "was limited to understand, remember, and carry out only simple instructions." Pl.'s Mem. at 19 (citing Tr. at 28, 29). Plaintiff further asserts that the RFC finding fails to account for his moderate limitations in concentration, persistence, or pace, which, according to Plaintiff, "further erodes the base of unskilled medium work." Id. at 19-20.

The undersigned finds no error here. First, the RFC determination that limits Plaintiff "to understanding, remembering, and carrying out simple instructions," Tr. at 7 (AC's

---

[9] It is clear that by referring to Plaintiff's "non-exertional limitations," the AC meant Plaintiff's limitations in understanding, remembering, and carrying out simple instructions. See Tr. at 6 (the AC stating that Plaintiff's "capacity for work at the medium level of exertion is further reduced by a limitation to understanding, remembering, and carrying out only simple instructions").

-14-

Decision) (emphasis omitted); Tr. at 29 (ALJ's Decision), adequately accounts for Plaintiff's mental impairments, including his "moderate difficulties" in "concentration, persistence, or pace," Tr. at 28; see Smith v. Comm'r of Soc. Sec., 486 Fed. App'x 874 (11th Cir. 2012) (unpublished) (concluding that limiting the plaintiff to simple, routine, and repetitive tasks adequately accounted for the plaintiff's moderate limitation in ability to maintain concentration, persistence, or pace because the record showed that the plaintiff could perform such tasks). This RFC finding is supported by substantial evidence in the record. See, e.g., Tr. at 426, 543, 591, 664-70, 676.

Second, the AC appropriately determined that Plaintiff's "non-exertional limitations do not significantly impact" his ability to perform medium unskilled work. Tr. at 7. As noted, Plaintiff's mental impairments are fully accounted for in the RFC finding that Plaintiff "is limited to understanding, remembering and carrying out simple instructions," Tr. at 29 (emphasis omitted), and Plaintiff does not suggest that any other non-exertional limitations are relevant here. This non-exertional limitation is consistent with an ability to perform unskilled work. See SSR 85-15 (emphasis added) (stating that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting"). Because the AC found that Plaintiff's non-exertional limitations do not "significantly limit [Plaintiff's] basic work skills," the AC's exclusive reliance on the Grids was appropriate. Phillips, 357 F.3d at 1242.

## V. Conclusion

-15-

In accordance with the foregoing, it is hereby **ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to 42 U.S.C. § 1383(c)(3) and sentence four of § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on February 19, 2016.

JAMES R. KLINDT
United States Magistrate Judge

clr
Copies to:
Counsel of record